794 F.2d 1478
 Son H. FLEMING, Petitioner-Appellant,
v.
Ralph KEMP, Warden, Georgia Diagnostic and Classification
Center, Respondent-Appellee.
 No. 86-8476.
 United States Court of Appeals,
Eleventh Circuit.
 June 27, 1986.
 
 Kenneth Shapiro, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for petitioner-appellant.
 William B. Hill, Jr., Asst. Atty. Gen., State of Ga., Mary Beth Westmoreland, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before FAY, JOHNSON and CLARK, Circuit Judges.
 PER CURIAM:
 
 
 1
 Son H. Fleming, who is scheduled to be executed on June 27, 1986, petitions this Court for a certificate of probable cause to appeal (CPC), for permission to present his application in forma pauperis (IFP), for a stay of execution and for relief on his second habeas corpus application. We determine that Fleming's habeas petition presents issues that "are debatable among jurists of reason," Barefoot v. Estelle, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 3394 n. 4, 77 L.Ed.2d 1090 (1983), and that are taken in good faith, 28 U.S.C.A. Sec. 1915(a); thus, we GRANT petitioner's request for certificate of probable cause to appeal and motion to proceed in forma pauperis. We conclude further that petitioner presents at least one substantial ground properly before this Court upon which he may be entitled to relief. Without deciding the merits of the habeas petition, we therefore STAY Fleming's execution pending further order of this Court.
 
 
 2
 * Son H. Fleming was convicted of murdering the police chief of a small South Georgia town and sentenced to death in 1977. On direct appeal, the Georgia Supreme Court reversed the death sentence because the trial judge erred in instructing the jury in the sentencing phase. In a second sentencing trial a jury again recommended the death penalty and the court sentenced petitioner accordingly.
 
 
 3
 After petitioner failed to win further relief on direct appeal and in state post-conviction proceedings, he filed his first federal habeas application with the United States district court for the Middle District of Georgia. That court denied the writ, Fleming v. Zant, 560 F.Supp. 525 (M.D.Ga.1983), and on appeal a divided panel of this Court affirmed, Fleming v. Kemp, 748 F.2d 1435 (11th Cir.1984). The United States Supreme Court denied certiorari. Fleming v. Kemp, --- U.S. ---, 106 S.Ct. 1286, 89 L.Ed.2d 593 (1986).
 
 
 4
 The Superior Court of Butts County, Georgia, thereafter denied petitioner's second state habeas application, and the Georgia Supreme Court refused to grant a certificate of probable cause to appeal. The United States District Court for the Middle District of Georgia denied Fleming's second federal habeas petition and application for stay of execution on June 25, 1986. This petition, stay application, and motions for CPC and IFP now come before this Court for review. Apart from the CPC and IFP orders, our decision here implicates only the stay application; we do not reach the merits of the habeas petition except to determine that the latter presents a substantial ground upon which relief might be granted.
 
 II
 
 5
 Petitioner presents five claims on appeal: (1) that the prosecutor's exercise of peremptory challenges to exclude blacks from the trial jury violated Fleming's sixth and fourteenth amendment rights under the Supreme Court's recent ruling in Batson v. Kentucky, --- U.S. ---, 106 S.Ct. 1712, 90 S.Ct. 69 (1986); (2) that Fleming's death sentence violated the sixth and fourteenth amendments under the Supreme Court's ruling in Michigan v. Jackson, --- U.S. ---, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), because it was based in part upon statements obtained in police interrogations after petitioner was formally charged and after he requested the assistance of counsel; (3) that petitioner was convicted and sentenced to death in violation of the sixth and fourteenth amendments because he did not have the assistance of counsel at his commital hearing; (4) that certain improper prosecutorial remarks made in closing argument at trial require reversal under Caldwell v. Mississippi, --- U.S. ---, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); and (5) that Fleming's death sentence is unconstitutional because Georgia's capital sentencing process is arbitrary and discriminatory. Without expressing any opinion on the merits of Fleming's claims, we stay Fleming's execution based on the first ground presented.
 
 
 6
 This Court will grant a stay of execution only if we find that: (1) an issue presented in the petition for habeas corpus is properly before this Court, (2) this issue presents substantial grounds upon which relief might be granted and cannot be responsibly reviewed by this Court prior to the scheduled time for execution of sentence. See Witt v. Wainwright, 755 F.2d 1396, 1398 (11th Cir.1985), rev'd on other grounds, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); Dobbert v. Strickland, 670 F.2d 938, 940 (11th Cir.1982); Barefoot v. Estelle, supra, 463 U.S. at 895, 103 S.Ct. at 3395 (1983).
 
 
 7
 To determine whether any ground for relief is properly before this Court we must consider whether Fleming has abused the writ in bringing a successive petition. We hold that petitioner did not abuse the writ in raising his Batson (juror exclusion based on race) claim on second habeas.
 
 
 8
 Successive petitions for habeas corpus are governed by Rule 9(b) of the Rules Governing 28 U.S.C.A. Sec. 2254. Rule 9(b) provides:
 
 
 9
 (b) Successive petitions. A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.
 
 
 10
 The petitioner may rebut the state's contention that he abused the writ in a successive petition in one of several ways:
 
 
 11
 "(a) If the ground was previously addressed in a federal habeas corpus proceeding, the petitioner must demonstrate that the decision was not on the merits or the ends of justice would be served by reconsideration of the merits. The 'ends of justice' are defined by objective factors, such as whether there was a full and fair hearing on the original petition or whether there was an intervening change in the facts of the case or the applicable law.
 
 
 12
 (b) If the ground was not previously presented in a federal habeas corpus proceeding, petitioner must demonstrate the failure to present the ground in the prior proceeding was neither the result of an intentional abandonment or withholding nor the product of inexcusable neglect." Witt v. Wainwright, supra, at 1397. See also Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).
 
 
 13
 In the case at bar, we must first determine whether petitioner properly raised his claim of unconstitutional exclusion of jurors based on race in his first habeas petition. The district court held that this was not the case. It perceived a crucial distinction between Fleming's original claim, that "[p]etitioner was indicted, convicted and sentenced by grand and traverse juries from which blacks and young persons were systematically excluded, in violation of the United States Constitution," and his allegation on successive habeas that he was convicted and sentenced in violation of the Constitution because
 
 
 14
 the prosecutor exercised his peremptory strikes at the guilt-innocence trial of petitioner, a black man, in a racially discriminatory manner so as to intentionally exclude otherwise qualified blacks from the jury solely on the basis of their race.
 
 
 15
 We cannot agree with the district court that the difference between these statements is critical. In Sanders, the Supreme Court made it clear that a "ground" for relief is a relatively broad term for abuse of the writ purposes. Sanders, supra, at 16, 83 S.Ct. at 1077. The Court indicated that identical grounds may often, on succeeding petitions, be proved by different factual allegations or supported by different legal arguments. Id. "Should doubts arise in particular cases as to whether two grounds are different or the same," the Court said, "they should be resolved in favor of the applicant." Id. (emphasis added). Resolving any doubts in favor of the petitioner in this case, we are satisfied that Fleming adequately raised his claim of improper juror exclusion based on race in his first habeas petition.
 
 
 16
 A second and distinct problem arises from the unusual posture of this case. As we hold above, petitioner did state the Batson ground for relief in his initial federal habeas petition--but it is also clear that he did not renew this argument on appeal. Respondent's charge of intentional abandonment could be construed to apply to petitioner's silence on this claim at the appellate stage. However, we reject such a conclusion.
 
 
 17
 The "intentional abandonment or withholding" doctrine obtains on a second habeas only where petitioner has not, in the words of Witt, supra, "previously presented [the ground for relief] in a federal habeas corpus proceeding." Cf. Sanders, supra, at 15, 83 S.Ct. at 1077 (ground must be presented in "prior [habeas] application"). But petitioner here did present the Batson ground in precisely such a proceeding, and the district court considered and rejected petitioner's arguments. Fleming v. Zant, supra, at 541-42. Once this ground was raised in the first habeas petition--all that is required under Witt and Sanders, supra,--no abandonment for abuse of the writ purposes could logically occur; what was done could not be undone. Petitioner's failure to re-argue this ground for relief on the appeal of his first habeas petition did not remove the claim from his petition. He simply conceded defeat on the merits.
 
 
 18
 This approach is counseled by previous decisions of this and our predecessor Circuit acknowledging that "[t]he 'abuse of the Writ' doctrine is of rare and extraordinary application," Paprskar v. Estelle, 612 F.2d 1003, 1007 (5th Cir.), cert. denied, 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980), a doctrine that should not be rigidly applied, Potts v. Zant, 638 F.2d 727, 746 (11th Cir.1981), cert. denied, 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981). This Court has consistently held that the question of whether intentional abandonment has occurred "must be tested under equitable principles, id. at 743; that is to say, "the equities of the situation and the conduct of the petitioner are relevant to the determination of whether an abuse has occurred," id. at 741. Here the lower court made no finding that the purpose of Fleming's failure to brief the Batson ground on appeal was "to vex, harass, or delay," Sanders, supra, 373 U.S. at 18, 83 S.Ct. at 1078, and in our view no such finding can be supported by the record. The "abandonment" presented here was simply not the sort of calculated and vexatious abandonment that the abuse of the writ doctrine was designed to forestall.[1]
 
 
 19
 This Court's recent decision in Bowden v. Kemp, 793 F.2d 273 (11th Cir.1986), does not command a different conclusion on the abuse of the writ issue. In Bowden, the Court determined that the petitioner abused the writ by raising a Batson claim for the first time on his third habeas petition, well after the Court's decision to grant certiorari in Batson. Fleming, however, raised the issue of racially-based exclusion of jurors at the appropriate time, in his first state and federal habeas petitions--and he did so some years before Batson was scheduled to be heard by the United States Supreme Court.
 
 
 20
 Since we determine that Fleming's Batson claim is a successive claim that has been decided on the merits in federal habeas proceedings--not a new claim intentionally withheld or inexcusably neglected until now--we must now decide whether the "ends of justice" would be served by a second review of this claim. Petitioner urges that an intervening change in the law applicable to juror exclusion mandates reconsideration. We agree.
 
 
 21
 In April, 1986, the Supreme Court decided Batson, supra, which substantially altered the evidentiary burden, formerly prescribed by Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), that a criminal defendant must meet to make out an equal protection claim based on a prosecutor's racially discriminatory use of peremptory challenges. If Batson applies to Fleming's case, then the law has clearly changed sufficiently to require a reconsideration of petitioner's juror exclusion claim.
 
 
 22
 The district court held that Batson is not relevant to Fleming's situation for two reasons. First, the court found that because all black jurors were not excluded from Fleming's jury as they were in Batson, the latter case did not apply. But nothing in Batson compels the district court's conclusion that constitutional guarantees are never abridged if all black jurors but one or two are struck because of their race. On the contrary, Batson restates the principle that " '[a] single invidiously discriminatory governmental act' is not 'immunized by the absence of such discrimination in the making of other comparable decisions.' " Batson, supra, 106 S.Ct. at 1722, quoting Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252, 266 n. 14, 97 S.Ct. 555, 564 n. 14, 50 L.Ed.2d 450 (1977). We cannot agree that Batson may be rendered a priori inapplicable by a prosecutorial game of numbers.
 
 
 23
 Second, the district court held that Batson by its own terms is not retroactive and, thus, that this decision cannot aid Fleming. Again, we disagree. Neither the Supreme Court nor this Court has in fact decided whether Batson will apply retroactively on direct appeal or in post-conviction proceedings. Indeed, the Supreme Court has granted certiorari to determine the former question in Griffith v. Kentucky, --- U.S. ---, 106 S.Ct. 2274, 90 L.Ed.2d 717, and Brown v. United States, 770 F.2d 912, cert. granted, --- U.S. ---, 106 S.Ct. 2275, 90 L.Ed.2d 718 (1986). Prudence dictates that the rush to execution should await the Supreme Court's guidance on this critical issue.
 
 
 24
 We find that Fleming does make out, at a minimum, a colorable Batson claim: At his trial, the prosecutor used eight of ten peremptory challenges to strike blacks from the jury, where the venire (after challenges for cause) consisted of only ten blacks and some 45 whites. Therefore, we STAY Fleming's execution pending the Supreme Court's decisions in Griffith and Brown and further order by this Court.
 
 
 25
 We retain jurisdiction of these proceedings for purposes of further review. The parties are directed to file briefs relating to all issues presented in the habeas corpus petition according to the schedule set by the Clerk of this Court.
 
 CLARK, Circuit Judge, specially concurring:
 
 26
 I write additionally to express my belief that appellant's issue with respect to waiver of right to counsel--the Michigan v. Jackson claim--has sufficient merit to warrant stay of the execution to permit briefing and full appellate review. A panel of this court in Collins v. Kemp, 792 F.2d 987 (1986), stayed execution of Collins on this issue.
 
 
 27
 The district court makes a distinction between Fleming's statement made at arraignment and Jackson's statement in the Michigan v. Jackson case. Jackson requested counsel at arraignment. Fleming instead stated that his mother was trying to obtain counsel for him. As I read Jackson, the Supreme Court decision is based upon the Sixth Amendment right to counsel. Surely Fleming expressed his desire to have counsel in his statement that his mother was trying to obtain one. (But she was delayed in doing so--the district court notes that eventually counsel was obtained--which makes Fleming's case very similar to that of Bladel, whose case was included with Jackson's in the Jackson case, 106 S.Ct. at 1406.)
 
 
 28
 The Supreme Court in Jackson, 106 S.Ct. 1404, 1409 & n. 6 (1986) made note that "doubts must be resolved in favor of protecting the constitutional claim. This settled approach to questions of waiver requires us to give a broad, rather than a narrow, interpretation to a defendant's request for counsel...." The Court then in n. 6 states "in construing respondent's request for counsel, we do not, of course, suggest that the right to counsel turns on such a request."
 
 
 29
 Consequently, it is my view that the foregoing issue as well as the Batson issue warrants stay of execution.
 
 FAY, Circuit Judge, dissenting:
 
 30
 With the greatest regard for the majority position, I am simply unable to find anything erroneous about the finding of the district judge that Claim 32 of the original federal habeas petition did not raise any claim concerning the use of peremptory challenges during the selection of the petit jury. The language used speaks in clear terms and deals with an area of the law well known to all in the profession. There is nothing related between the composition of master wheels or pools for juries (grand or petit) and the use of challenges during voir dire. The Batson issue, as it is now labeled, was not raised until it was included in this successive petition. As such it is subject to the traditional scrutiny encompassed in the abuse of the writ doctrine.
 
 
 31
 In addition, it is my opinion that we do the petitioner no favor by stretching the words of Claim 32 to include a Batson issue. Counsel candidly admits that this claim (whatever it included) was deliberately, knowingly and for tactical reasons abandoned on the appeal taken in that matter. The majority's approach totally ignores the abandonment of this issue when the case was appealed to this court. To conclude that a simple presentation to the district court is sufficient will surely lead to much tactical game playing. The balancing of equitable factors under the "ends of justice" analysis might overcome such abandonment in some instances, but it should not be ignored. As we stated in Bowden, after May 31, 1983 there could be little doubt that five members of the Supreme Court questioned the continued vitality of Swain. The appellant's brief in the first appeal was filed on June 20, 1983. The reply brief was filed August 25, 1983. There is no question that counsel had presented the issue to the state court and was familiar with both the factual records and the state of the law. In sum, based upon what has been presented to us, I would not excuse the deliberate waiver.
 
 
 32
 Agreeing with the district court's analysis of the other issues, I would deny the requested relief.
 
 
 
 [1]
 Judge Fay's dissent simply misses the mark on this point. His observation that five members of the Supreme Court had questioned the continued vitality of Swain a month before appellant's brief in the first appeal was filed ignores one critical fact. As recently as April of this year, this Court made it clear that this Circuit still adhered "strictly" to Swain. United States v. Dennis, 786 F.2d 1029, 1049 (11th Cir.1986)