No. 86–6955 (A–860).   TUCKER *v.* KEMP, WARDEN.   C. A. 11th Cir.   Application for stay of execution of sentence of death, presented to JUSTICE POWELL, and by him referred to the Court, denied.   Certiorari denied.   The order heretofore entered staying the execution of sentence of death until 7 p.m., May 29, 1987, will not be extended.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, and with whom JUSTICE BLACKMUN joins as to Part II, dissenting.

I

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth

and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting), I would grant the stay application and the petition for certiorari and would vacate the death sentence in this case.

## II

Even if I did not hold this view, I would still grant the application for a stay and the petition for certiorari. Petitioner raises a substantial claim that the trial court's instruction to the jury unconstitutionally shifted the burden of proof to petitioner in violation of *Francis* v. *Franklin*, 471 U. S. 307 (1985).

Petitioner William Tucker was tried for murder, kidnaping with bodily injury, armed robbery, and aggravated sodomy. Intent was a crucial issue at trial. Trial testimony indicated that, on the day of the crime, Tucker was under the influence of drugs and alcohol, which he had been using heavily since his father's death less than three months earlier. Both the prosecutor and the defense attorney focused their closing remarks on Tucker's state of mind and his ability *vel non* to form the requisite criminal intent.

The trial court's instruction to the jury included the following charge on the burden of proof with respect to the defendant's criminal intent:

> "Ladies and Gentlemen, a crime is the violation of the Statute of this State in which there shall be a union or joint operation of act and intention, or criminal negligence.
>
> *"Now, I'm going to give you certain presumptions. A person is presumed to be of sound mind and discretion, but the presumption may be rebutted. The acts of a person of sound mind and discretion are presumed to be the product of the person's will. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his act. But, these presumptions may be rebutted. The person will not be presumed to act with criminal intention, but the trier of facts, and that's you the jury, may find such intention upon consideration of the words, conduct, demeanor and other circumstances connected with the act for which the accused is prosecuted."* Tr. 822–823 (emphasis added).

After deliberations, the jury returned a verdict of murder, kidnaping with bodily injury, and robbery by intimidation. After a sentencing hearing, Tucker was sentenced to death.

In *Francis* v. *Franklin, supra,* the trial court gave a similar instruction to the jury:

> "A crime is a violation of a statute of this State in which there shall be a union of joint operation of act or omission to act, and intention or criminal negligence. A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention or criminal negligence. *The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.*" 471 U. S., at 311–312 (emphasis added).

In *Franklin,* the Court held that this instruction created a mandatory presumption that shifted to the defendant the burden of proof on the element of intent, thereby depriving him of due process under the Fourteenth Amendment. The charge given in Tucker's case is virtually identical to the jury instruction in *Franklin.*

Tucker petitioned the District Court for a writ of habeas corpus, raising the *Franklin* claim for the first time in a federal court. The District Court denied an evidentiary hearing on this claim solely on its conclusion that the petition constituted an abuse of the writ, because Tucker had filed a previous petition for federal habeas corpus in District Court on January 28, 1982, that did not raise the *Franklin* claim. The Court of Appeals agreed. It concluded that since, in its view, "*Franklin* did not constitute 'new law[,'] petitioner's *Franklin* claim should have been raised in his first petition," and that therefore it was an abuse of the writ under Habeas Corpus Rule 9(b), 28 U. S. C. § 2254. 819 F. 2d 978, 980 (CA11 1987). Rule 9(b) allows a federal court to dismiss a second federal petition when "new and different grounds are alleged," if "the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ."

In my view, Tucker's failure to raise the *Franklin* claim in his first petition for federal habeas relief does not constitute abuse of the writ under Rule 9(b). In *Sanders* v. *United States*, 373 U. S. 1 (1963), the Court established guidelines for cases involving potential abuse of the writ:

> "Thus, for example, if a prisoner *deliberately* withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. The same may be true if, as in *Wong Doo* [v. *United States*, 265 U. S. 239 (1924)], the prisoner *deliberately abandons* one of his grounds at the first hearing. Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose *only purpose* is to vex, harass, or delay." *Id.*, at 18 (emphasis added).

The Court of Appeals for the Eleventh Circuit requires a habeas petitioner to demonstrate that "the failure to present the ground in the prior proceeding was neither the result of an intentional abandonment or withholding nor the product of inexcusable neglect" to avoid dismissal of a subsequent petition. *Witt* v. *Wainwright*, 755 F. 2d 1396, 1397, rev'd on other grounds, 469 U. S. 412 (1985), quoted in *Fleming* v. *Kemp*, 794 F. 2d 1478, 1482 (CA11 1986).

In considering the present petition by a man facing execution, the District Court refused to conduct an evidentiary hearing, but made no finding of intentional abandonment, deliberate withholding, or inexcusable neglect.[1] In my view, this represents an unexplained departure from the standards set forth in *Sanders*, *supra*. Tucker's petition establishes that under *Sanders* his petition does not constitute abuse of the writ.

This Court did not decide *Franklin* until April 29, 1985. The Georgia Supreme Court had earlier dismissed Franklin's appeal raising the burden of proof issue in 1980, eight months before

---

[1] Both the District Court and the Court of Appeals found that, because *Franklin* did not represent a substantial break in precedent with *Sandstrom* v. *Montana*, 442 U. S. 510 (1979), Tucker had no excuse for failing to raise the claim in his first petition.

Tucker's appeal to that same court. *Franklin* v. *State*, 245 Ga. 141, 153–154, 263 S. E. 2d 666, 674 (1980). Tucker did not raise the *Franklin* claim at that time. Thus, Tucker had a perfectly valid reason for his failure to raise the *Franklin* claim in his first federal habeas petition—it would obviously have been frivolous to do so. The Georgia Supreme Court repeatedly rejected *Franklin* claims during the two years in which Tucker had the opportunity to present the claim in state courts, prior to filing his first federal habeas petition in January 1982. See, *e. g.*, *Rose* v. *State*, 249 Ga. 628, 631, 292 S. E. 2d 678, 681 (1982); *Zant* v. *Gaddis*, 247 Ga. 717, 718, 279 S. E. 2d 219, 220–221, cert. denied, 454 U. S. 1037 (1981); *Lackey* v. *State*, 246 Ga. 331, 338, 271 S. E. 2d 478, 484–485 (1980); *Robinson* v. *State*, 246 Ga. 469, 470–471, 271 S. E. 2d 786, 788 (1980); *Adams* v. *State*, 246 Ga. 119, 122, 271 S. E. 2d 11, 12–13 (1980); *Bridges* v. *State*, 246 Ga. 323, 324, 271 S. E. 2d 471, 472–473 (1980). It is unreasonable, therefore, to dismiss this second federal habeas petition on the ground that petitioner's failure to raise in his first petition what was a frivolous claim barred him forever from asserting that claim once *Francis* made clear that it was viable.

The record in this case contains no evidence that the *Franklin* claim was intentionally abandoned or deliberately withheld. The affidavit of petitioner's counsel states:

> "At the time we filed the original petition for writ of habeas corpus I had no basis for believing that the portion of the charge concerning intent and state of mind was in any way constitutionally infirm. The language of the charge was taken nearly verbatim from Georgia statutes which had repeatedly been upheld by the Georgia Supreme Court. I was aware of no case that would indicate that this portion of the jury charge was unconstitutional and I had no reason to believe that that charge was improper.
>
> "We included in the petition for writ of habeas corpus all claims which appeared to be viable based on our reasoned and professional judgment of the facts and law. It was our intent to include all nonfrivolous claims. We did not deliberately withhold this claim or intentionally abandon it. This claim was not included in the petition because in the exercise of our reasoned professional judgment we were not aware that it ex-

isted." Affidavits of Robert B. Remar and Eric G. Kocher, 819 F. 2d, at 980.[2]

In *Franklin* we held that a charge identical in all pertinent respects to the one given here violated the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt. Here, the Court permits a man to be executed despite the likelihood that his conviction was obtained in violation of this fundamental tenet of our criminal law. It does so on the untenable ground that petitioner has abused the writ by failing to anticipate that a claim repeatedly held without merit by the State Supreme Court would ultimately be vindicated here. I dissent.

---

[2] Petitioner himself submitted an affidavit that states:

"At no time did I instruct Mr. Remar or Mr. Kocher to withhold that [*Franklin* claim]. In fact, we agreed that all claims that my attorneys believed had any merit should be asserted in my habeas corpus petition. . . .

"At no time have I deliberately withheld any claims or intentionally abandoned any claims. I wanted every claim that my attorneys were aware of to be filed in my original habeas corpus petition." Affidavit of William Boyd Tucker (Exhibit F to Pet. for Cert.).